[627 NYS2d 707]

JOHN ELLIS et al., Respondents, v SEBASTIAN A. PETER, Appellant.

Second Department, May 22, 1995

### APPEARANCES OF COUNSEL

*Wilson, Elser, Moskowitz, Edelman & Dicker,* New York City *(Glen Feinberg* and *Nina Cangiano* of counsel), for appellant.

*John Anthony Bonina & Associates, P. C.,* Brooklyn *(Sandra D. Janin* and *Andrea Bonina* of counsel), for respondents.

### OPINION OF THE COURT

Santucci, J.

In this case we address the question of whether the law of New York State imposes upon a physician a duty of care which extends to the spouse of a patient who contracts tuberculosis as the result of the physician's alleged negligent failure to properly diagnose the disease in his patient. We hold that there is neither a statutory nor common-law duty imposed upon a physician for the benefit of those who may contract such disease from the patient.

In March 1992, the plaintiffs commenced the instant action

against the defendant doctor, Sebastian A. Peter (hereinafter the defendant). In the first of the four causes of action pleaded in the verified complaint, the plaintiff patient, John Ellis (hereinafter the husband), alleged medical malpractice based upon, *inter alia,* the defendant's failure to timely diagnose and treat his tuberculosis. In the second cause of action, the plaintiff, Joan Ellis (hereinafter the wife), alleged, *inter alia,* that the defendant was negligent in failing to advise and warn her "of the fact of the diseases *[sic]* existence, the nature of the disease, and the likelihood of contracting the disease upon coming into contact with an afflicted person/patient". In the third cause of action the wife sought to recover damages for the loss of her husband's services. In the fourth cause of action, the husband sought to recover damages for the loss of his wife's services.

After joinder of issue, the plaintiffs moved to strike the defendant's fifth and sixth affirmative defenses which respectively asserted (1) that the complaint failed to state a cause of action on behalf of the wife, and (2) that there did not exist a physician-patient relationship between the defendant and the wife. The defendant then cross-moved to dismiss the second and fourth causes of action. The Supreme Court granted the plaintiffs' motion and denied the defendant's cross motion. We reverse.

Initially, we note that the parties have treated the wife's cause of action as a hybrid malpractice/negligence action. However, in light of the fact that the wife was never a patient of the defendant, we perceive no physician-patient relationship upon which recovery for malpractice may be predicated *(see, Heller v Peekskill Community Hosp.,* 198 AD2d 265; *Lee v City of New York,* 162 AD2d 34; *LoDico v Caputi,* 129 AD2d 361). Thus, the wife's causes of action against the defendant must necessarily be based upon either common-law negligence or the defendant's breach of some statutory obligation.

It is well settled that before a defendant may be held liable for negligence, it must be shown that the defendant breached a duty of reasonable care owed to the plaintiff *(see, Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579, 584; *Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 342). Indeed, in the absence of duty there can be no breach, and without a breach, there is no liability *(see, Pulka v Edelman,* 40 NY2d 781, 782).

In the case at bar the wife alleges that the defendant breached a duty of reasonable care by failing to warn her

about her husband's infectious condition. However, "[a] physician's duty of care is ordinarily one owed to his or her patient" *(Purdy v Public Adm'r of County of Westchester,* 72 NY2d 1, 9), and does not extend to the "community at large" *(Eiseman v State of New York,* 70 NY2d 175, 188). It is true that the wife, while a member of the community at large, may also be considered to be in that class of persons whom the defendant "knew or reasonably should have known were relying on him for [a duty of care] to his patient" *(Eiseman v State of New York,* 70 NY2d 175, 188, *supra).* Nevertheless, were we to extend the defendant's duty of care to the wife under these circumstances, we perceive no demarcation of the point where that duty would end. In other words, if the physician owes a duty to a patient's spouse to warn her about his patient's condition, such a duty would also logically extend to other individuals with whom the patient was in close contact, such as other relatives, e.g., his children, co-workers, or even fellow commuters. Clearly such individuals represent the "community at large" to whom a physician owes no duty of care. Thus, the imposition of a common-law duty upon the defendant herein with respect to the wife could "expand traditional tort concepts beyond manageable bounds and create an almost infinite universe of potential plaintiffs" *(Widera v Ettco Wire & Cable Corp.,* 204 AD2d 306, 307).

To the extent that the wife asserts that it was foreseeable that an individual, like herself, who was in close daily contact with the patient, would be in the zone of risk for contracting a communicable disease from the patient, we note that "[f]oreseeability should not be confused with duty" *(Pulka v Edelman,* 40 NY2d 781, 785, *supra).* Neither the concept of foreseeability nor the zone of risk defines a duty, but instead "only circumscribes the boundaries of a duty after it has been established that one exists" *(Sorgente v Richmond Mem. Hosp.,* 142 Misc 2d 870, 873). Here there is no duty and thus we do not reach the issue of whether the wife's tubercular condition was a foreseeable result of the physician's alleged failure to diagnose the disease in her husband.

In reaching this conclusion we are not unaware that, under facts similar to those at bar, many foreign jurisdictions would accord the wife a cause of action in common-law negligence against the defendant *(see, e.g., Bradshaw v Daniel,* 854 SW2d 865 [Tenn]; *DiMarco v Lynch Homes-Chester County,* 384 Pa Super 463, 559 A2d 530, *affd* 525 Pa 558, 583 A2d 422; *Shepard v Redford Community Hosp.,* 151 Mich App 242, 390

NW2d 239; *Gooden v Tips,* 651 SW2d 364 [Tex]; *Bradley Ctr. v Wessner,* 161 Ga App 576, 287 SE2d 716; *McIntosh v Milano,* 168 NJ Super 466, 403 A2d 500). However, the common law of New York State does not impose such a duty and we decline to depart from this tradition herein, mindful that "a new cause of action will have foreseeable and unforeseeable consequences, most especially the potential for vast, uncircumscribed liability" *(Madden v Creative Servs.,* 84 NY2d 738, 746).

In this regard we note that " '[w]hile moral and logical judgments are significant components [in determining the duty owed by one member of society to another], [the courts] are also bound to consider the larger social consequences of [their] decisions and to tailor [their] notion of duty so that "the legal consequences of wrongs [are limited] to a controllable degree" ' " *(Eiseman v State of New York,* 70 NY2d 175, 187, *supra,* quoting *Waters v New York City Hous. Auth.,* 69 NY2d 225, 229, quoting *Tobin v Grossman,* 24 NY2d 609, 619). Furthermore, "[t]ort liability * * * depends on balancing competing interests: 'the question remains who is legally bound to protect [plaintiffs' right] at the risk of liability. * * * [To] identify an interest deserving protection does not suffice to collect damages from anyone who causes injury to that interest'. * * * Not every deplorable act * * * is redressable in damages" *(Madden v Creative Servs.,* 84 NY2d 738, 746, *supra,* quoting *Humphers v First Interstate Bank,* 298 Ore 706, 713-716, 696 P2d 527, 530-533). Therefore, the fact that the defendant owed no cognizable duty to the wife perforce means he cannot be held liable for the wife's condition, regardless of whether his alleged malpractice may be perceived as negligently impacting upon her.

█ We also find that the defendant did not breach any statutory duty to the wife. Public Health Law § 2222, entitled "Tuberculosis; protection of patient's family; duty of physicians and health officers", states in pertinent part as follows: "It shall be the duty of a physician attending to a patient having tuberculosis to take all proper precautions and to give proper instructions to provide for the safety of all individuals occupying the same house or apartment" (§ 2222 [1]). It is axiomatic that under this section a physician's duty to warn members of the patient's household can only be triggered upon the physician's awareness that his/her patient has contracted tuberculosis. Moreover, although the Public Health Law creates such a duty, the scope of that duty is more

precisely defined by reference to the State Sanitary Code (see, Public Health Law § 225). Specifically State Sanitary Code (10 NYCRR) § 2.27, entitled "Physician to isolate person with highly communicable disease and give instructions regarding prevention of spread of the disease", provides: "It shall be the duty of the attending physician immediately *upon discovering,* a case of highly communicable disease * * * [to] advise other members of the household regarding precautions to be taken to prevent further spread of the disease and shall inform them as to appropriate specific preventive measures" (emphasis added).

Thus, when the above provisions are read in conjunction, it becomes apparent that the Legislature chose only to impose a "duty to warn" where the physician has actually diagnosed tuberculosis in his patient. Clearly, the Legislature could have imposed a duty upon doctors to warn members of a patient's household where, as here, the physician may have merely suspected, or had reason to suspect, that tuberculosis was present *(see, Sorgente v Richmond Mem. Hosp.,* 142 Misc 2d 870, *supra).* However, such is not the intent of these provisions. And, as noted by the dissent, it is the province of the Legislature to determine whether to extend the statutory duty under 10 NYCRR 2.27 so as to render it applicable to situations where a diagnosis has not been made *(see, e.g., Tenuto v Lederle Labs.,* 207 AD2d 541). Therefore, the defendant did not breach the statutory duty created by Public Health Law § 2222 as defined by 10 NYCRR 2.27.

Accordingly, we hold that the wife has no cause of action to recover damages in either malpractice or negligence against the defendant on the theory that she contracted tuberculosis as a result of the defendant's alleged failure to diagnose tuberculosis in her husband and his consequent failure to warn members of the husband's household of their risk of contracting the disease.

Therefore, the order appealed from is reversed, the plaintiffs' motion to strike the defendant's fifth and sixth affirmative defenses is denied, the defendant's cross motion to dismiss the plaintiffs' second and fourth causes of action is granted, and *the matter is remitted to* the Supreme Court, Kings County, for entry of a judgment dismissing the plaintiffs' second and fourth causes of action.

PIZZUTO, J. (dissenting). I cannot agree with my colleagues that the common law of this State does not impose upon a

physician a duty of care extending to the spouse of a patient who is stricken with tuberculosis as the result of the physician's negligent failure to properly diagnose the patient. I conclude that when a physician negligently fails to diagnose a patient's tuberculosis, the physician's common-law duty of care extends to a spouse who resides with the patient, and the spouse may recover under a theory of negligence if consequently stricken with the disease as a result of that negligence. As such, I respectfully dissent.

Initially, I note my agreement with the majority's conclusion that the defendant did not owe the wife a statutory duty pursuant to Public Health Law § 2222 or 10 NYCRR 2.27 (i.e., the State Sanitary Code). Unlike the legislative bodies of some sister States, our Legislature did not vest physicians with a duty to warn members of a patient's household when the physician merely suspects, or has reason to suspect, that tuberculosis is present (see, Pa Stat Annot, tit 35, § 521.4; Tenn Code Annot, § 68-9-201). It is singularly within the province of the Legislature to determine whether to extend the statutory duty so as to render it applicable to instances where a diagnosis has not been made (see, e.g., Tenuto v Lederle Labs., 207 AD2d 541).

However, while mapping the boundaries of a statutorily created duty is the responsibility of the Legislature (see, Tenuto v Lederle Labs., supra), defining the scope of a common-law duty is clearly an issue to be resolved by the judiciary. As noted by the majority, the courts of many jurisdictions have recognized that the duties created by the existence of a physician-patient relationship are not owed exclusively to the patient (see, e.g., Bradshaw v Daniel, 854 SW2d 865 [Tenn]; DiMarco v Lynch Homes-Chester County, 384 Pa Super 463, 559 A2d 530, affd 525 Pa 558, 583 A2d 422; Shepard v Redford Community Hosp., 151 Mich App 242, 390 NW2d 239; Gooden v Tips, 651 SW2d 364 [Tex]; Bradley Ctr. v Wessner, 161 Ga App 576, 287 SE2d 716; McIntosh v Milano, 168 NJ Super 466, 403 A2d 500; Tarasoff v Regents of Univ. of Cal., 17 Cal 3d 425, 551 P2d 334; Hofmann v Blackmon, 241 So 2d 752 [Fla]; Renslow v Mennonite Hosp., 67 Ill 2d 348, 367 NE2d 1250). In New York jurisprudence, the courts have, on occasion, extended a physician's duty of care to a nonpatient third party (see, Miller v Rivard, 180 AD2d 331; Wojcik v Aluminum Co., 18 Misc 2d 740). Moreover, the Court of Appeals and this Court have each specifically recognized, albeit in dictum, that a physician may owe a duty of care to a class of persons

other than the patient *(see, Purdy v Public Adm'r of County of Westchester,* 72 NY2d 1, 9; *Eiseman v State of New York,* 70 NY2d 175, 188; *Rebollal v Payne,* 145 AD2d 617). Indeed, in *Purdy v Public Adm'r of County of Westchester (supra,* at 9), the Court of Appeals stated that "A physician's duty of care is ordinarily one owed to his or her patient. With respect to the physician-patient relationship giving rise to a duty owing to members of an indeterminate class of persons, we have only recently stated in the context of a physician reporting to a college admissions office the results of a physical examination of an applicant to the college that 'the physician plainly owed a duty of care to his patient *and to persons he knew or reasonably should have known were relying on him for this service to his patient',* but that the physician did not 'undertake a duty to the community at large' *(Eiseman v State of New York,* 70 NY2d 175, 188, *supra)*" (emphasis added). This principle is embodied in Restatement (Second) of Torts § 324 A, which although not cited in either *Purdy (supra), Eiseman (supra),* or *Rebollal (supra),* has been adopted as part of the common law in the State *(see, Miller v Rivard,* 180 AD2d 331, 337, *supra; see also, Jansen v Fidelity & Cas. Co.,* 165 AD2d 223, 228 [Levine J., dissenting]).

Restatement (Second) of Torts § 324 A, entitled "Liability to Third Person for Negligent Performance of Undertaking", provides as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

In *Miller v Rivard (supra),* the Appellate Division, Third Department, relied upon this section in extending a physician's duty of care to a vasectomy patient's wife who alleged that she became pregnant as a result of the physician's negligent performance of the vasectomy *(see also, DiMarco v Lynch Homes-Chester County,* 384 Pa Super 463, 559 A2d 530,

*affd* 525 Pa 558, 583 A2d 422, *supra* [applying Restatement (Second) of Torts § 324 A within the context of a physician-patient relationship]). It is my view that the principle embodied in subdivision (a) of Restatement (Second) of Torts § 324 A applies in this case to extend the defendant's duty of care to the wife. If, as alleged by the plaintiffs, the defendant was negligent in failing to diagnose the husband's tuberculosis, then it can be said that (1) he should have recognized that his services were necessary for the protection of the wife, and (2) his failure to exercise reasonable care increased the risk of physical harm to the wife, who has alleged that she continually resided with her husband at the time he fell ill *(cf., Britton v Soltes,* 205 Ill App 3d 943, 563 NE2d 910 [physician's failure to diagnose patient's tuberculosis did not result in liability to patient's family because patient was divorced and living apart from his family at the time he fell ill]).

Furthermore, the principle embodied in subdivision (c) of Restatement (Second) of Torts § 324 A is likewise applicable in this case because if it is proven that the defendant committed malpractice in failing to diagnose the husband's tuberculosis, and if the defendant was aware that the wife resided with the husband, then the defendant should have been aware that the wife was relying on him for his services to the husband *(see generally, Eiseman v State of New York, supra,* at 188; *Miller v Rivard, supra,* at 337).

In light of the foregoing, I conclude that under the facts of this case the defendant owed a common-law duty of care to the wife, which required him to warn her of the presence of tuberculosis in her husband and advise her regarding the precautions and preventative measures to be taken to guard against her becoming afflicted with the disease.

Contrary to the majority's conclusion, the imposition of this common-law duty upon the defendant would not "expand traditional tort concepts beyond manageable bounds and create an almost infinite universe of potential plaintiffs" (Widera v Ettco Wire & Cable Corp., 204 AD2d 306, 307). I am mindful of the fact that in determining whether one member of society owes a common-law duty of care to another, the judiciary is "bound to consider the larger social consequences of our decisions and to tailor our notion of duty so that 'the legal consequences of wrongs [are limited] to a controllable degree' " *(Waters v New York City Hous. Auth.,* 69 NY2d 225, 229, quoting *Tobin v Grossman,* 24 NY2d 609, 619). To this end, I share the majority's concern that a physician who

treats a patient, particularly one suspected of suffering from a highly communicable disease, not be held liable to an indeterminate class of persons conceivably injured as a result of any negligence committed by the physician. The duty which I believe the common law of this State imposes upon the defendant does not extend to the community at large, but rather extends only to the limited class of people situated as is the wife herein.

In addition, the public policy concerns manifest in cases concerning the diagnosis of highly communicable diseases compel the result which I suggest. In an age blighted by the increasing number of tuberculosis cases, the prevention and control of this highly communicable disease, as well as others, is of the utmost importance to the health and welfare of the citizenry. Consequently, I do not see the logic in demarcating the boundaries of a physician's common-law duties in such a manner that the negligent failure to render a proper diagnosis would inure to the physician's benefit by absolving him or her of liability to those directly injured by the act of negligence. Such is the practical effect of the majority's decision. That is, had the defendant diagnosed the plaintiff patient's tuberculosis, he would have clearly been charged with a duty to exercise reasonable care in advising and warning the plaintiff wife of the dangers of the disease (see, Public Health Law § 2222; 10 NYCRR 2.27). To hold that no such duty exists where there has been a negligent failure to diagnose the highly communicable disease would effectively reward the physician for failing to discover that which should have been discovered (see, Hofmann v Blackmon, 241 So 2d 752, supra). Such an anomalous result would certainly not further the remedial aims of tort law.

In reaching this conclusion, I am in accord with Justice Spodek, who in denying the defendant's cross motion to dismiss the second and fourth causes of action, reasoned as follows: "If the jury in the instant case finds that the defendant committed malpractice in failing to diagnose the existence of tuberculosis in John Ellis, then any distinction between a defendant physician being aware and having 'discovered' the disease and a defendant who legally should have been aware or should have discovered the disease is insignificant, artificial and of no consequence. In other words, if the plaintiffs prove a case of malpractice for failure to diagnose tuberculosis, then it follows inexorably that the defendants [sic] should have known of the existence of the tubercular

condition of the plaintiff and with the acquisition of such knowledge comes the duty to inform the patients *[sic]* spouse. Hence, a finding of liability by a jury against the defendant in this action would automatically impute a legal duty between the physician and plaintiff-wife Joan Ellis" (emphasis in original).

Accordingly, I would affirm the order appealed from.

COPERTINO, J. P., and FLORIO, J., concur with SANTUCCI, J.; PIZZUTO, J., dissents in a separate opinion.

Ordered that the order of the Supreme Court is reversed, on the law, without costs or disbursements, the motion by the plaintiffs to strike the defendant's fifth and sixth affirmative defenses is denied, the defendant's motion to dismiss the second and fourth causes of action is granted, and the matter is remitted to the Supreme Court, Kings County, for entry of a judgment dismissing the plaintiffs' second and fourth causes of action.