924 P.2d 468

**Steven B. RIDDLE, Plaintiff/Appellant,**

**v.**

**ARIZONA ONCOLOGY SERVICES, INC., an Arizona corporation, Defendant/Appellee.**

No. 2 CA–CV 95–0314.

Court of Appeals of Arizona, Division 2, Department A.

March 7, 1996.

As Corrected March 8, 1996.

Review Denied Sept. 24, 1996.

Roush, McCracken & Guerrero by Charles D. Roush and Bryn R. Johnson, Phoenix, and Philip G. May, P.C. by Philip G. May, Phoenix, for Plaintiff/Appellant.

Teilborg, Sanders & Parks, P.C. by Robert J. Bruno and Melinda K. Cekander, Phoenix, for Defendant/Appellee.

## OPINION

PELANDER; Judge.

In this personal injury action, plaintiff/appellant Steven Riddle appeals from the trial court's judgment dismissing his complaint under Ariz.R.Civ.P. 12(b)(6), 16 A.R.S., based on the court's legal conclusion that defendant/appellee Arizona Oncology Services, Inc. (AOS) owed no duty to plaintiff. We affirm.

"Because the trial court granted a motion to dismiss the complaint for failure to state a claim, we must take the alleged facts as true." *Petolicchio v. Santa Cruz County Fair and Rodeo Ass'n, Inc.,* 177 Ariz. 256, 258, 866 P.2d 1342, 1344 (1994). The dismissal "can be upheld only if plaintiff would not be entitled to relief under any facts susceptible of proof under the claim stated." *Mattison v. Johnston,* 152 Ariz. 109, 114, 730 P.2d 286, 291 (App.1986).

The material allegations of plaintiff's complaint are as follows. In September 1992, Kelly Sutton was employed by AOS as a radiology technician. She had a history of drug abuse which was known to AOS. On the morning of September 21, 1992, Sutton came to work at AOS high on cocaine and consumed additional cocaine while at work. She was conspicuously intoxicated and incapable of performing her work duties. Recognizing Sutton's condition and severely impaired motor function, her supervisor, in furtherance of AOS's business interests, ordered Sutton to leave AOS's premises before the end of her work shift. AOS, through its employees, knew or should have

known that Sutton could not safely operate a vehicle in her intoxicated condition.

In compliance with her employer's order, Sutton left work. Shortly after leaving AOS's premises, Sutton drove her vehicle across the centerline, colliding head-on with plaintiff's vehicle and seriously injuring him. The accident occurred at approximately 3:30 p.m., during Sutton's normal work shift.

Plaintiff's complaint further alleged that "[h]aving exercised its authority and control over Sutton by the affirmative act of ordering her from the premises under the circumstances described herein, [AOS] had a duty to act reasonably to protect third parties such as the Plaintiff from the foreseeable risk of harm."[1] Relying on *Bruce v. Chas Roberts Air Conditioning, Inc.*, 166 Ariz. 221, 801 P.2d 456 (App.1990), and *Keckonen v. Robles*, 146 Ariz. 268, 705 P.2d 945 (App. 1985), AOS moved for dismissal, contending that an employer does not have a duty to protect a third party from injury allegedly caused by an off-duty employee away from the employer's premises. The trial court agreed, granted the motion, and this appeal followed.

The only issue addressed in the trial court and requiring our decision now is whether, assuming the truth of all of plaintiff's factual allegations, AOS owed a duty to third party motorists such as plaintiff. Relying primarily on *Petolicchio v. Santa Cruz County Fair and Rodeo Ass'n, Inc.*, 177 Ariz. 256, 866 P.2d 1342 (1994)[2], and *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983), plaintiff contends that AOS "owed a duty to the motoring public to use reasonable care (in dealing with Sutton) to 'guard against' the dangers of driving while under the influence of drugs." That duty, according to plaintiff,

arose from AOS's "employment relationship which gave [AOS] the ability to control the dangerous conduct of Sutton."

 As our supreme court has stated:

1. The question of duty is decided by the court. The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff. If the answer is no, the defendant is not liable even though he may have acted negligently in light of the foreseeable risks....

2. If there is a duty, then the law requires that the defendant conform to a standard of care. In negligence cases that is usually "reasonable care under the circumstances," though it may differ, depending on the relationship.... All of these standards carry with them an implicit requirement that defendant act reasonably in light of the known and foreseeable [*sic*] risks. It is here, in determining whether the defendant acted reasonably or negligently, that the law concerns itself with specifics of defendant's conduct.

*Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356–57, 706 P.2d 364, 368–69 (1985).

 Contrary to plaintiff's contention, the legal determination of duty does not totally hinge on foreseeability of risk or injury. As plaintiff correctly notes, foreseeability of harm appears to be an element of duty under Arizona case law. *See, e.g., Alhambra Sch. Dist. v. Superior Court*, 165 Ariz. 38, 42, 796 P.2d 470, 474 (1990) (school district owed duty to foreseeable user of marked crosswalk); *Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 266, 782 P.2d 739, 742 (App.1989) ("One element of duty is foreseeability.").[3]

---

1. Plaintiff did not allege that Sutton was acting within the course and scope of her employment at the time of the accident. Thus, he claims only independent negligence, not *respondeat superior* vicarious liability, against AOS.

2. *Petolicchio* is not particularly helpful to our analysis here. Our supreme court simply held *inter alia* that "a licensee storing alcohol has a duty to exercise reasonable care to guard that substance from those who will foreseeably endanger the public by its use." 177 Ariz. at 262, 866 P.2d at 1348. The court essentially recog-

nized a special duty owed by licensees whose conduct can allow or prevent the access of liquor to minors.

3. There is some confusion and lack of clarity in Arizona law, however, as to what extent, if any, foreseeability issues bear on the initial legal determination of duty. *Compare Rager v. Superior Coach Sales & Serv. of Ariz.*, 111 Ariz. 204, 210, 526 P.2d 1056, 1062 (1974) ("Whether or not there is a duty on the part of the defendant to protect the plaintiff from the injury of which he complains is based on foreseeability.") *with Mar-*

Foreseeability alone, however, does not create a duty. *D'Amico v. Christie,* 71 N.Y.2d 76, 87, 524 N.Y.S.2d 1, 6, 518 N.E.2d 896, 901 (1987) ("Foreseeability of harm is alone not enough."). Thus, that an impaired driver under the influence of alcohol or drugs may foreseeably cause an accident is not determinative of the duty issue here.

██ "In the absence of precedent, unraveling the legal doctrines pertaining to duty and applying them to a particular situation is often a difficult task." *Davis v. Cessna Aircraft Corp.,* 182 Ariz. 26, 31, 893 P.2d 26, 31 (App.1994). Here, however, we do have some helpful precedent. In *Keckonen,* supervisory personnel of the defendant/employer participated with other employees in a paycheck pool. Money from the pool was then used to buy beer consumed at a social gathering on the employer's premises after work hours. The gathering lasted over three hours, during which time an employee consumed three or four beers on the employer's premises. The employee, accompanied by a supervisor, then went to a bar where the employee spent approximately one and one-half hours and drank three more beers. It was assumed that the employee was intoxicated when he left the employer's premises to go to the bar. After leaving the bar, the employee crossed the centerline and caused a serious accident.

In affirming a summary judgment for the defendant/employer, this court declined to find "any duty on the part of the social host ... not to furnish intoxicating beverages to an intoxicated guest in order to protect a person who might be injured by the guest's drunk driving after leaving the premises."

*Keckonen,* 146 Ariz. at 271, 705 P.2d at 948. In essence, this court held that "an employer is not liable for the negligent acts of an employee occurring off the employer's property even though the employee became intoxicated on the employer's property and the employer knew the employee was intoxicated when he left his property." *Bruce,* 166 Ariz. at 227, 801 P.2d at 462.[4]

In *Bruce,* an employee became intoxicated while attending an impromptu social gathering with co-employees after work on the employer's premises. The employer's supervisors knew about the workers' beer drinking at and around the work yard and did not object or prohibit it. The employee spent about three hours socializing and drinking beer in or near the work yard. His blood alcohol content would have been between .27% and .29%, and he would have been visibly intoxicated to an unimpaired person, when he left the employer's premises. Approximately three hours later, while driving home, the employee collided head-on with plaintiff's vehicle.

The court in *Bruce* rejected plaintiff's contention that the employer "had a duty to exercise reasonable care to prevent [the employee] from leaving his premises while intoxicated and that for breach of that duty, [the employer] may be held independently liable for the resulting injuries." *Bruce,* 166 Ariz. at 227, 801 P.2d at 462. Therefore, the court affirmed summary judgment for the defendant/employer, holding that the employer "owed no duty to [plaintiff] on which liability could be founded." *Id.* at 223, 801 P.2d at 458.

*kowitz,* 146 Ariz. at 357, 706 P.2d at 369 ("The test for whether conduct is negligent is whether there is a foreseeable risk of injury from the conduct.") *and Coburn v. City of Tucson,* 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984) ("[T]he details of conduct necessary to meet those duties will vary from case to case, depending upon the foreseeability of harm if the person under the obligation pursues or fails to pursue a particular course of conduct.... Ordinarily, creating such a foreseeable risk would breach the standard of care and thus would be negligent. However, liability does not attach unless there is also duty."). As Division One of this court has noted: "We find [our supreme court's] admonition [not to equate the concepts of duty with specific de-

tails of conduct] somewhat difficult when attempting to define foreseeability as an element of duty, for we are at a loss to see how foreseeability can be viewed in the abstract." *Cooke v. Berlin,* 153 Ariz. 220, 223 n. 3, 735 P.2d 830, 833 n. 3 (App.1987).

4. In *Markowitz,* our supreme court cited *Keckonen* as an illustrative case where the defendant was under no obligation "to use some care to avoid or prevent injury to the plaintiff" and therefore not liable, even though "he may have acted negligently in light of the foreseeable risks." *Markowitz,* 146 Ariz. at 356, 706 P.2d at 368.

Plaintiff attempts to distinguish *Keckonen* and *Bruce* on several grounds, none of which we find persuasive. He first contends that there "was no evidence that the employer [in *Bruce*] knew the employee was intoxicated nor appreciated that the employee could not safely operate a vehicle." However, the employer's supervisors "knew about the workers' occasional beer drinking at and around the yard," 166 Ariz. at 222, 801 P.2d at 457, and two supervisors were present when the employee drank and socialized before the accident. In addition, the employee "would have been visibly intoxicated" to an unimpaired person when he left the yard. *Id.* at 223, 801 P.2d at 458. Similarly, in *Keckonen* it was assumed that the employee "was intoxicated when he left his employer's premises," and he went with a supervisor from there to a bar, where they drank more beer. *Keckonen*, 146 Ariz. at 272 n. 3, 705 P.2d at 949 n. 3. Thus, just as plaintiff alleged in this case, the employers in *Keckonen* and *Bruce* knew or should have known that the employee could not safely operate a motor vehicle when he left the employer's premises because of his intoxicated, impaired condition.

Plaintiff also contends that, unlike AOS, the employers in *Keckonen* and *Bruce* did not affirmatively order their employees to leave the workplace or cause them to drive from the employer's premises in an intoxicated condition. We first note that plaintiff's complaint only alleges that AOS's "supervisor ordered Sutton to leave the Defendant's premises prior to the end of her work shift." There is no allegation that AOS ordered or required Sutton to drive.

More importantly, Sutton's intoxication was not caused, contributed to or condoned by AOS. In contrast, *Keckonen* and *Bruce* involved situations where alcohol was consumed on the employer's premises with the employer's knowledge and tacit consent. Indeed, in *Keckonen* the employer's supervisors participated in the purchase and consumption of the alcohol on the employer's premises. Inasmuch as no duty was found in those cases, we are hard-pressed to find any duty here, where AOS did not facilitate or tolerate the employee's use of drugs or intoxicated condition.

In a further effort to distinguish *Keckonen* and *Bruce*, plaintiff notes that the employees' drinking and driving there occurred after work at a time and place where the employers no longer could exercise control over the employees, whereas this accident occurred shortly after Sutton left AOS's premises and during her regular work shift. That distinction makes no difference in resolving the duty issue here. For all practical purposes, Sutton's shift terminated, albeit prematurely, when she was told to leave. To base the determination of duty on the precise timing of events would be arbitrary. It would have been no different had Sutton appeared for work in an intoxicated condition near the end of the workday and been told to leave at quitting time, and the accident occurred after work hours.

AOS did not furnish Sutton with any intoxicants or with a vehicle. It simply instructed her to leave the premises because of her intoxicated condition and inability to work. Under those circumstances, AOS did not have a duty to control Sutton's actions or to prevent her from operating a vehicle. We agree with AOS's contention that "[i]f an employer has no duty to third persons injured by an employee who became intoxicated at a company-related event and then was negligent on the way home [as in *Keckonen* and *Bruce*], then it has no duty to third persons injured by an intoxicated employee sent home from work because of her intoxicated condition" which the employer did not contribute to, participate or acquiesce in. It would be anomalous to impose a duty on an employer who had no role in the employee's consumption or condition simply for telling an intoxicated employee to leave the workplace, but to impose no duty on the employer who furnished alcohol to an employee on the job site and then permitted the intoxicated employee to leave in an impaired condition which the employer caused or contributed to.

■ With certain limited exceptions, "the common law imposes no duty to control the actions of another." *Tamsen v. Weber*, 166 Ariz. 364, 367, 802 P.2d 1063, 1066 (App. 1990). *See also Fedie*, 162 Ariz. at 265, 782 P.2d at 741; Restatement (Second) of Torts § 315 (1965). One of the exceptions, covered

in Restatement § 317, deals with a master's duty to control the conduct of its servant. Under that section, however, a master's duty "to exercise reasonable care so to control his servant while acting outside the scope of his employment," Restatement § 317, "is limited to torts committed by employees on the employer's premises or with the employer's chattels." *D'Amico*, 71 N.Y.2d at 88, 524 N.Y.S.2d at 7, 518 N.E.2d at 901.

As in *D'Amico*, the accident did not occur on the employer's premises nor did it involve the employer's property. Thus, as that court found, the mere fact that there is an employer-employee relationship does not create a legal duty on the part of the employer. The court in *Bruce* rejected plaintiff's contention under Restatement § 317 because the employer "had no duty under [that section] to exercise care to control [the employee's] conduct in any respect once he left the [employer's premises] and headed for home," *Bruce*, 166 Ariz. at 228, 801 P.2d at 463, and because there was no indication the employer "would have had a legal right to assert such control." *Id.* at 228 n. 5, 801 P.2d at 463 n. 5. We reach that same conclusion here.

The court in *Bruce* also found no duty under Restatement § 319 [5] in the absence of evidence that the employer "took charge of or otherwise exercised control over [the employee]." *Id.* at 228, 801 P.2d at 463. AOS did not take charge or have custody of Sutton within the meaning of that section, and plaintiff does not contend otherwise. *See Cowin v. Huntington Hospital*, 130 Misc.2d 267, 496 N.Y.S.2d 203 (1985). *Compare Tamsen*, 166 Ariz. at 367–68, 802 P.2d at 1066–67.

To the extent *Otis Engineering* supports plaintiff's position, we reject it. In that case, the employer's supervisor sent an obviously intoxicated employee home in the middle of his work shift, escorting him to the company's parking lot and "send[ing] him out on the highway." 668 S.W.2d at 309. In a 5–4 decision, the court held that "when, because of an employee's incapacity, an employer exercises control over the employee, the em-

ployer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." *Id.* at 310. Again, unlike *Otis Engineering*, there was no allegation that anyone at AOS directed Sutton to drive. As the dissent in *Otis Engineering* stated, correctly we believe, the employer, despite sending the intoxicated employee home during his work shift, "did not voluntarily take [the employee] into its custody or assume responsibility for his conduct." *Id.* at 313. In this situation, "an employer has no duty to exercise control over an off-duty employee," partly "because the employer lacks the corresponding legal right to exercise such control." *Id.* at 314.

As the dissent in *Otis Engineering* further noted: "No court in any jurisdiction has ever held that an employer who has not contributed to an employee's state of intoxication will be liable for that employee's off-duty, off-premises torts." *Id.* at 319. We have found no other authority supporting that view, nor has plaintiff furnished any. On the other hand, a number of courts have reached the opposite conclusion, that the employer owes no duty to third parties in cases similar to this. *See, e.g., Wienke v. Champaign County Grain Ass'n*, 113 Ill.App.3d 1005, 69 Ill.Dec. 701, 447 N.E.2d 1388 (1983); *Thies v. Cooper*, 243 Kan. 149, 753 P.2d 1280 (1988); *Meany v. Newell*, 367 N.W.2d 472 (Minn.1985); *Cowin; Tallariti v. Kildare*, 63 Wash.App. 453, 820 P.2d 952 (1991).

The court in *Bruce* not only distinguished *Otis Engineering* but also implicitly disagreed with it, "agree[ing] instead with decisions like *D'Amico....*" *Bruce*, 166 Ariz. at 228, 801 P.2d at 463. In *D'Amico*, the employer's foreman fired an intoxicated employee and told him to leave the premises. While driving home, the employee caused a fatal collision a short distance from the employer's plant. The plaintiffs contended that the employer owed a duty based on the employment relationship or on the fact that it took charge of or controlled the employee when it or-

---

**5.** Restatement § 319 provides: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

dered him to leave the premises, and that the employer's "independent act of directing or allowing [the employee] to drive while too intoxicated to work was negligent and a direct cause of the foreseeable accident...." *D'Amico*, 71 N.Y.2d at 82, 524 N.Y.S.2d at 3, 518 N.E.2d at 898. The New York Court of Appeals rejected those contentions, and we reject plaintiff's similar contentions here.[6]

 "The decision by a court to impose liability is a policy decision." *Keckonen*, 146 Ariz. at 271, 705 P.2d at 948. Duty essentially is " 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " *Ontiveros v. Borak*, 136 Ariz. 500, 508, 667 P.2d 200, 208 (1983), *quoting* W. Prosser, *Handbook on the Law of Torts*, § 42 at 324–27 (4th ed. 1971). Based on the facts alleged here, "[p]roper judicial restraint compels the conclusion that, as a matter of law, [AOS] owed no duty to control the conduct of [Sutton]." *Otis Engineering*, 668 S.W.2d at 319 (J. McGee, dissenting). Accordingly, the trial court's judgment dismissing plaintiff's complaint is affirmed.

LIVERMORE, P.J., and FERNANDEZ, J., concur.

---

**6.** Plaintiff's attempt to distinguish *D'Amico* on the basis that the employee there was fired before being ordered to leave the premises is unavailing. Indeed, it may have been even more foreseeable that an intoxicated employee who not only was ordered to leave work early but also was fired would drive negligently and cause an accident. Aside from that one fact, *D'Amico* otherwise is directly on point with this case, and we choose to follow it.